UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EUGINE V. ELKINS,<br><br>　　　　　　　　　　Petitioner,<br><br>　　v.<br><br>JAMES KEY,<br><br>　　　　　　　　　　Respondent. | No. C16-5956 BHS-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  April 28, 2017** |

Petitioner Eugine V. Elkins was convicted by jury verdict of second-degree felony murder. Dkt. 8, Exhibit 1. In his 28 U.S.C. § 2254 petition, he raises four grounds for habeas relief: (1) trial court error in admitting petitioner's pretrial statements; (2) trial court error in denying motion for mistrial; (3) second degree felony murder is unconstitutionally vague when the underlying felony is assault; and (4) factual and legal innocence. Dkt. 4, pp. 5, 7-8, 10. Respondent contends that Mr. Elkins exhausted his first claim, which the Court may now determine on the merits. However, Mr. Elkins failed to exhaust his second, third, and fourth claims and these claims are now procedurally barred. Dkt. 7, p. 5. Respondent characterizes Mr. Elkins' petition as a mixed petition containing both exhausted and unexhausted claims and suggests that the Court advise Mr. Elkins of his available options pursuant to *Rose v. Lundy,* 455 U.S. 509, 522 (1982).

REPORT AND RECOMMENDATION - 1

Mr. Elkins' petition is not a mixed petition as his unexhausted claims are procedurally barred in state court. Because Mr. Elkins cannot return to state court to raise the claims, the claims are technically exhausted and are subject to the requirements of procedural default. Mr. Elkins fails to make a showing of cause and prejudice, fundamental miscarriage of justice, or actual innocence. Therefore, his unexhausted claims should be dismissed and his first claim should be denied on the merits.

## BACKGROUND

**A. Statement of Facts**

The Washington Court of Appeals summarized the facts as follows:

> A. Murder, Flight, and Arrest
>
> At about 3:00 AM on the morning of June 6, 2012, one of Elkins' neighbors in the mobile home park in which Elkins resided heard "some awful rattling and clanking" and a woman screaming from the area of Elkins' trailer. 2 Verbatim Report of Proceedings (VRP) at 273. The noise lasted for 15 to 20 minutes.
>
> At about 4:00 AM, Elkins left a voice mail on his friend Brianne Elaine Slosson's phone asking her to contact him about something important. Approximately three and a half hours later, Slosson contacted Elkins. He first told Slosson that his girlfriend Kornelia Engelmann was dead and that Slosson should "keep [her] mouth shut." 2 VRP at 246, 248. Elkins then said that he was not sure if Engelmann was dead and told Slosson, who was a certified nursing assistant, that he wanted her to come over and check on Engelmann. Slosson immediately went to Elkins' home.
>
> She found Engelmann laying face up on the bedroom floor; Engelmann was dead. Slosson could see that Engelmann was black and blue from the chest up. When Slosson asked Elkins if he had done this to Engelmann, he responded that he had beaten her but that she was fine when she went to bed around midnight. He also said that she must have fallen when she got up to use the bathroom.

REPORT AND RECOMMENDATION - 2

Elkins then left, telling Slosson to give him a 10 minute head start before she called 911 and to tell the police that he had gone to Oregon. As soon as he left, Slosson called 911. Several deputies arrived and verified that Engelmann was dead. [Court's footnote omitted.]

That afternoon, Elkins arrived unexpectedly at a friend's house in Wapato. . . . Yakima County deputies arrived around an hour later and arrested Elkins. At about 3:30 PM, the Yakima County deputies advised Elkins of his *Miranda*[1] rights. Elkins declined to make a statement, and the Yakima County deputies did not question him further.

### B. June 6 Interview

That evening, Sergeant Don L. Kolilis and Detective Keith A. Peterson from the Grays Harbor County Sheriff's Office arrived in Yakima. The Yakima County deputies told Kolilis and Peterson that Elkins had been advised of his rights and had not wanted to speak to the Yakima County deputies.

Kolilis and Peterson interviewed Elkins at about 8:30 PM. Although they did not readvise Elkins of his *Miranda* rights, Kolilis and Peterson asked Elkins if he had been advised of these rights, if he remembered them, and if he understood those rights were still in effect. After Elkins confirmed that he recalled being advised of his *Miranda* rights and that he understood those rights were still in effect, Elkins agreed to talk to the deputies. [Court's footnote omitted.]

During this interview, Elkins told deputies that he and Engelmann had gotten into an argument the Friday [Court's footnote omitted] before her death because he believed that she had been flirting with another man and that this argument had escalated into "pushing, shoving and continued on." 3 VRP at 459, 493. Elkins explained that during this altercation, Engelmann scratched him and he hit her "quite a few times" with an open hand. 2 VRP at 460. When the deputies commented on the extensive bruising on Engelmann's body and asked Elkins if he had kicked her, hit her with something, or hit her with a closed fist, Elkins said that he did not want to talk to the deputies any longer and requested an attorney. The deputies ended the interview.

### C. Statements during Transit and June 7 Interview

The next day, Kolilis transported Elkins back to Grays Harbor County. During the drive, Kolilis engaged Elkins in small talk. [Court's footnote omitted.]

---

[1] *Miranda v. State of Arizona*, 384 U.S. 436 (1966).

REPORT AND RECOMMENDATION - 3

> Towards the end of the drive, Elkins told Kolilis that he wanted to talk about what had happened and about some guns he (Elkins) may have taken with him from his home. Kolilis told Elkins to wait until they arrived at the sheriff's office and they could properly advise him of his *Miranda* rights. After arriving at the Grays Harbor sheriff's office, being readvised of his *Miranda* rights, [Court's footnote omitted.] and signing a written waiver of these rights, Elkins gave a written statement.
>
> . . .
>
> ### A. Motion to Suppress
>
> Before trial, Elkins moved to suppress the statements he made to the Grays Harbor County deputies on June 6 and June 7. Defense counsel told the trial court that Elkins was not challenging the admission of any statements he made while being transported from Yakima to Grays Harbor County because those statements were not the result of interrogation. At the suppression hearing, the Yakima County and Grays Harbor deputies testified . . . .
>
> . . .
>
> ### B. Trial Testimony and Mistrial Motion
>
> At trial, the State's witnesses testified as described above, although they generally did not comment about when or whether Elkins asserted his *Miranda* rights. Elkins did not present any witnesses. The trial court also provided the jury with a redacted copy of Elkins' June 7 written statement . . . .
>
> Kolilis . . . did testify that he and Peterson had ended the June 6 interview when Elkins requested an attorney after the deputies asked him if he had hit Engelmann with something, kicked her, or hit her with a closed fist. Elkins objected to this testimony and moved for a mistrial. The trial court denied the motion for a mistrial but instructed the jury to disregard that statement.

Dkt. 8, Exhibit 2, *State v. Elkins,* Washington Court of Appeals No. 44968-4-II, pp. 2-7.

**B.** **Statement of Procedural History**

Mr. Elkins appealed from his judgment and sentence to the Washington Court of Appeals. Dkt. 8, Exhibit 3. He raised the following issues: (1) the trial court erred in admitting his pretrial statements; (2) the trial court erred in denying his motion for a mistrial; and (3) second degree felony murder is unconstitutionally vague when the underlying felony is assault. *Id.*, p. ii.

REPORT AND RECOMMENDATION - 4

The Washington Court of Appeals affirmed the judgment and sentence. *Id.*, Exhibit 2. In his petition for review, Mr. Elkins raised only one issue – he was interrogated five hours after he invoked his right to remain silent but was not readvised of his *Miranda* rights. *Id.*, Exhibit 5, at 1. On December 4, 2015, the En Banc Panel denied review. *Id.*, Exhibit 6. The mandate issued on December 30, 2015. *Id.*, Exhibit 7.

## STANDARD OF REVIEW

A federal court may grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir.2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003). A federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn

REPORT AND RECOMMENDATION - 5

state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir.2004).

The Court retains the discretion to determine whether an evidentiary hearing is appropriate. *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir.2000). Following an independent review of the record, the Court concludes that an evidentiary hearing is unnecessary as the issues in this case involve questions of law only and may be resolved by reference to the existing state court record.

## DISCUSSION

**A.    Claim One – Admission of Pretrial Statements**

Mr. Elkins contends the trial court should not have admitted his confession because it was made five hours after he had invoked his *Miranda* rights and he had not been readvised of his *Miranda* rights. Dkt. 4, p. 16. Mr. Elkins also takes issue with "small talk" during his transport from Yakima to Montesano because it was designed to elicit a confession. *Id.*, p. 17.

**1.    Readvisement of Rights by Grays Harbor Deputies**

The Washington Court of Appeals[2] noted, in rejecting Mr. Elkins' claim, that the State of Washington has rejected a per se prohibition of further interrogation after an accused has asserted his right to counsel:

---

[2] The last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). *Barker v. Fleming*, 423 F.3d 1085, 1092 n. 3 (9th Cir.2005); *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir.2003). Here, the Washington Court of Appeal's decision was the last reasoned decision in which the state court adjudicated Petitioner's claims on the merits. Where there has been one reasoned state judgment rejecting a

REPORT AND RECOMMENDATION - 6

> A per se prohibition of any further interrogation, once an accused has asserted his right to counsel, has been rejected in this state. Further questioning of a suspect is allowed provided the following conditions exist: (1) the right to cut off questioning was scrupulously honored; (2) the police engaged in no further words or actions amounting to interrogation before obtaining a waiver or assuring the presence of any attorney; (3) the police engaged in no tactics which tend to coerce the suspect; and (4) the subsequent waiver was knowing and voluntary. . . .

Dkt. 8, Exhibit 2, p. 9 (citing *State v. Mason,* 31 Wn. App. 41, 44-45, 639 P.2d 800 (1982) (other internal citations omitted). The Washington Court of Appeals further noted:

> Elkins does not challenge the trial court's oral findings that before the Grays Harbor County deputies interviewed him on June 6, (1) the Yakima County deputies had advised him of his *Miranda* rights, (2) Elkins fully understood those rights, stated that he understood those rights, and chose to exercise his right to silence at that time, (3) the Yakima County deputies immediately honored Elkins' request and did not attempt to further question him, (4) the Yakima County deputies informed the Grays Harbor County deputies that Elkins had been advised of his rights, (5) approximately five hours after Elkins was first advised of his rights, the Grays Harbor County deputies asked him if he recalled his rights, (6) Elkins confirmed that he recalled his rights, (7) Elkins further said that he understood that those rights were still in effect, (8) the Grays Harbor County deputies did not coerce or trick Elkins in any way, and (9) Elkins agreed to talk to the deputies.
>
> …
>
> … Although the record does not show that the Grays Harbor County deputies fully readvised Elkins of his *Miranda* rights on June 6, Elkins does not direct us to any case involving a situation such as the one here, where the defendant was advised of and previously asserted his right to silence and, although the law enforcement officers did not fully readvise the defendant of his *Miranda* rights before reinitiating the interrogation, they ensured that he understood his rights and that those rights were still in effect at the time of the officers' later contact with him. Nor have we been able to locate any such case.

Dkt. 8, Exhibit 2, pp. 10-14. Based on these facts, the Washington Court of Appeals held that the deputies' subsequent questioning of Mr. Elkins was permissible without readvisement of his

---

federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

REPORT AND RECOMMENDATION - 7

*Mirnda* rights "because his right to cut off questioning was scrupulously honored. There were no further words or actions amounting to interrogation before the officers obtained a waiver, the officers did not engage in any coercive tactics, and Elkins' subsequent waiver was knowing and voluntary." *Id.*, p. 8, 14-16.

For a confession obtained during a custodial interrogation to be admissible, any waiver of one's *Miranda* rights must be voluntary, knowing and intelligent. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). A waiver of *Miranda* rights need not be express: "[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. 369, 373 (1979). As explained by the Supreme Court, "[t]he question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Id*.

Where an officer confirms that a person in a custodial interrogation setting understands his rights, such confirmation is sufficient to establish that person's knowledge of his rights. *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir.1997). "[A] defendant's subsequent willingness to answer questions after acknowledging his *Miranda* rights is sufficient to constitute an implied waiver." *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir.2000) (citation omitted); *see also Cazares*, 121 F.3d at 1244; *United States v. Velasquez*, 626 F.2d 314, 320 (3d Cir.1980); *United States v. Stark*, 609 F.2d 271, 272–73 (6th Cir.1979) (per curiam).

The Supreme Court has eschewed per se rules mandating that a suspect be readvised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances. *See Wyrick v. Fields*, 459 U.S. 42, 48–49 (1982) (per curiam) (rejecting per se rule requiring police to readvise suspect of his rights before questioning him about results

REPORT AND RECOMMENDATION - 8

of polygraph examination); *United States v. Andaverde,* 64 F.3d 1305, 1312 (9th Cir. 1995) ("[t]he courts have generally rejected a per se rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners."). Statements made nearly fifteen hours after *Miranda* warnings were administered have been ruled admissible. *Guam v. Dela Pena*, 72 F.3d 767, 770 (9th Cir.1995) (citing with approval earlier decisions involving intervals of two days, *id.*, citing *Puplampu v. United States*, 422 F.2d 870 (9th Cir.1970) (per curiam), and three days, *id.*, citing *Maguire v. United States*, 396 F.2d 327, 331 (9th Cir.1968)).

Here, only five hours passed after *Miranda* warnings were administered. As noted by Mr. Elkins' attorney, five hours is "not a significant period of time." Dkt. 8, Exhibit 8, Verbatim Report of Proceedings, April 4, 2013, p. 6. The detectives asked Mr. Elkins if he remembered his rights and understood that his rights were still in effect. *Id.*, pp. 29, 66. Sergeant Kolilis and Detective Peterson testified that Mr. Elkins was uncuffed during the interview, the interview was fairly relaxed, and no threats or promises were made. *Id.*, pp. 30-31, 66-67. They also testified that Mr. Elkins did not appear confused and appeared "very transparent, lucid, understood everything we were saying." *Id.*, Exhibit 8, pp. 30, 67.

Sergeant Kolilis testified that Mr. Elkins became upset with one of the questions during the interview and "asked for an attorney." *Id.*, Exhibit 8, p. 32. Detective Peterson testified that after Mr. Elkins was asked some questions about how many times he struck his girlfriend, Mr. Elkins said something to the effect of, "I don't really like where this is going, I think I would like my attorney . . . ." *Id.*, Exhibit 8, p. 67. Both witnesses testified the interview was immediately terminated. *Id.*, Exhibit 8, at 32, 67. Mr. Elkins acknowledges the interview only lasted thirty minutes and ended when he requested an attorney. Dkt. 4, p. 16.

REPORT AND RECOMMENDATION - 9

The totality of the circumstances in this case supports the conclusion that Mr. Elkins was aware of his *Miranda* rights, he understood those rights, and he knew they were still in effect as evidenced by his request for an attorney. Immediately after he requested an attorney, the interview was concluded. Thus, the Washington Court of Appeals' rejection of this claim was neither contrary to nor an unreasonable application of established federal law.

**B.    "Small Talk"**

Mr. Elkins also takes issue with "small talk" engaged in by the detectives during the drive from Yakima to Montesano because the small talk was allegedly designed to elicit a statement from him. Mr. Elkins acknowledges that he was readvised of his *Miranda* rights after the transport ended and before he gave that statement, but "it was too little, too late."  Dkt. 4, p. 17. This claim was also rejected by the Washington Court of Appeals:

> Elkins next contends that Kolilis improperly initiated the further interrogation on June 7 by engaging in conversation with him during the drive from Yakima County to Grays Harbor County. Elkins asserts that he did not voluntarily initiate further conversation related to the case because (1) the conversation in the car was lengthy, over four hours, (2) Kolilis initiated the conversation, and (3) Kolilis admitted that he had hoped to encourage Elkins to talk about the case by initiating small talk. Br. Of Appellant at 15-16. Again, we disagree.
>
> Kolilis's uncontradicted testimony established that Elkins was the one who changed the direction of the conversation from a casual conversation to one focused on the crime, and Kolilis merely told Elkins to wait until they arrived in Grays Harbor County and they could properly advise him of his rights. And the law prohibits improper interrogation, not casual conversation. *State v. Cunningham,* 116 Wn. App. 219, 228, 65 P.3d 325 (2003) (*Miranda* applies to custodial interrogations by state agent; "[a]n interrogation occurs when the investigating officer should have known his or her questioning would provoke an incriminating response.").

Dkt. 8, Exhibit 2, pp. 17-18.

REPORT AND RECOMMENDATION - 10

There is no evidence indicating that Mr. Elkins did not understand his *Miranda* rights, did not understand when his rights were in effect, or that the waiver of his rights was anything but voluntary. It is well-established that "coercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "There must be some causal connection between the police conduct and the confession." *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir.1992). Here, although the officers engaged in small talk with Mr. Elkins, there is nothing to indicate that Mr. Elkins' will was overcome by the casual conversation. *See, e.g.*, *Mickey v. Ayers*, 606 F.3d 1223, 1234–35 (9th Cir. 2010) (officer engaging in "small talk" for several hours with a suspect during transport on international flight does not constitute interrogation, even if the discussion includes disturbing personal information about the suspect's family known to the officer, where police asked no questions, the suspect initiated the conversation and the casual conversation was not reasonably likely to elicit an incriminating response.)

The Washington courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established law. Thus, this claim should be denied.

**B.    Claims Two, Three, and Four - Exhaustion**

To present a claim to a federal court for review in a habeas corpus petition, a petitioner must first have presented that claim to the state court. See 28 U.S.C. § 2254(b)(1). Claims for relief that have not been exhausted in state court are not cognizable in a federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994). A petitioner must properly raise a habeas claim at every level of the state courts' review. *See Ortberg v. Moody*, 961 F.2d 135, 138

REPORT AND RECOMMENDATION - 11

(9th Cir. 1992). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).

A complete round of the state's established review process includes presentation of a petitioner's claims to the state's highest court. *James v. Borg*, 24 F.3d at 24. However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004). But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available").

If a petitioner's claims are unexhausted, the district court can dismiss the petition without prejudice to give the prisoner a chance to return to state court to litigate his unexhausted claims before he can have the federal court consider his claims. However, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default, the district court dismisses the petition because the petitioner has no further recourse in state court." *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002).

//

REPORT AND RECOMMENDATION - 12

### 1. Unexhausted Claims

Mr. Elkins did not exhaust his second, third and fourth claims within the meaning of 28 U.S.C. § 2254(b) because he failed to properly raise those claims at every level of the state courts' review. Mr. Elkins abandoned his second and third claims when he did not move for discretionary review in the state's highest court. Dkt. 8, Exhibit 5. Mr. Elkins admits he never presented his fourth claim in any form to the state courts. Dkt. 4, p. 11. Thus, Mr. Elkins failed to present these claims for a full round of state court review and they are, therefore, unexhausted.

In addition, because Mr. Elkins has completed one post-conviction challenge and because his judgment and sentence became final more than one year ago (December 30, 2015), the claims are procedurally barred. Wash. Rev. Code 10.73.090, 10.73.140, and RAP 16.4(d).

### 2. Procedural Bar

Mr. Elkins has completed one post-sentence challenge. His judgment and sentence became final more than a year ago. Dkt. 8, Exhibit 7. RCW 10.73.090 prevents him from filing a new personal restraint petition because it is time-barred by the one-year statute of limitations and RCW 10.73.140 does not allow him to file a successive personal restraint petition in the state court of appeals to properly present his unexhausted claims there. Thus, Claims 2, 3, and 4 are not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

### 3. Cause and Prejudice

Unless it would result in a "fundamental miscarriage of justice," a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman v.*

REPORT AND RECOMMENDATION - 13

*Thompson*, 501 U.S. at 750.  The petitioner must show an objective factor actually caused the failure to properly exhaust a claim.  *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995).  "The fact that [a petitioner] did not present an available claim or that he chose to pursue other claims does not establish cause."  *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

A petitioner can demonstrate "cause" by showing interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  However, a petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct.  *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992).  A petitioner's inadequacies and lack of expertise in the legal system do not excuse a procedural default.  *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986).

Mr. Elkins makes no showing of cause and prejudice.  He also makes no showing of actual innocence.  His sole contention in this regard consists of the following: "the actual innocence exception applies where the record conclusively shows that Mr. Elkins is innocent of a portion of his sentence."  Dkt. 4, p. 17.

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. at 496).  "To meet this manifest injustice exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light of the new evidence.'"  *Wood*, 130 F.3d at 379 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  The petitioner must also "make a stronger showing than that needed to establish

REPORT AND RECOMMENDATION - 14

prejudice." *Schlup*, 513 U.S. at 327. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. "'[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.'" *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Mr. Elkins fails to meet this standard. He presents no evidence of actual innocence to permit him to pass through the *Schlup* gateway and to argue the merits of his time-barred claims. His unexhausted habeas claims are procedurally barred under an independent and adequate state law. Because Mr. Elkins cannot show cause and prejudice or actual innocence to excuse his procedural default, the unexhausted claims are not cognizable in federal court and should be dismissed.

**CERTIFICATE OF APPEALABILITY**

A petitioner seeking post-conviction relief may appeal a district court's dismissal of his § 2254 motion only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). Mr. Elkins is not entitled to a COA because he has not shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Mr. Elkins should address whether a COA should be issued in his written objections, if any, to this Report and Recommendation.

//

//

## CONCLUSION

Based on the foregoing, the Court recommends that Mr. Elkins' habeas petition (Dkt. 4) be **denied and his claims dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 28, 2017**, as noted in the caption.

**DATED** this  11th  day of April, 2017.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16